CIVIL ACTION NO. 1:10-CV-00016-M

JOHNEY FINN, Administrator of the Estate
of Shannon Ray Finn, deceased, et al.                          PLAINTIFFS


v.


WARREN COUNTY, KENTUCKY,
SOUTHERN HEALTH PARTNERS, INC., et al.                 DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on various motions in limine filed by Defendant Leah Price [DN 168–169] and by Defendants Warren County, Kentucky; William Baker; Greg Martin; Chad Whitaker; Tom Maxwell; and Allen White [DN 170–175]. Also before the Court are motions in limine filed by Defendant John Adams, M.D. [DN 176, 181] and by Plaintiffs [DN 178]. Further, this matter is before the Court on Plaintiffs' partial summary judgment motion against Defendants Warren County, Kentucky; William Baker; Greg Martin; Tom Maxwell; Chad Whitaker; and Allen White [DN 185], as well as on Plaintiffs' objections to the Defendants' exhibit and witness lists [DN 179–180]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

This case involves the death of Mr. Shannon Ray Finn on March 20, 2009 at the Warren County Regional Jail. (Compl. [DN 1] ¶ 1.) The Plaintiffs initially filed suit against Warren County, Kentucky, various Warren County Regional Jail employees, Southern Health Partners, Nurse Cheryl Wilson, Nurse Leah Price, and Dr. John Adams. (See id.) The Plaintiffs allege that the Defendants violated 42 U.S.C. § 1983 by infringing Mr. Finn's Eighth, Tenth, and Fourteenth Amendment rights

through negligent, intentional, and/or deliberate indifference to his health and well-being. (Id. ¶¶ 17–18.) The Plaintiffs also allege outrage, negligence, and gross negligence claims. (Id. ¶¶ 19–22.)

After conducting discovery, the parties filed summary judgment motions. In response to these motions, the Court entered a Memorandum Opinion and Order [DN 133]. Later, on August 23, 2012, the Court entered an Agreed Order of Dismissal [DN 143]. Since then, the Court has been informed that Defendant Price has settled her claims with Plaintiffs. These orders and the settlement, when summarized, indicate that the following parties and claims remain in this case: (1) Fourteenth Amendment § 1983 claims against Defendant Warren County; (2) Fourteenth Amendment § 1983 claims against Defendants Whitaker, Martin, Maxwell, and White, in their individual capacities; and (3) state negligence and gross negligence claims against Defendants Baker, Whitaker, Martin, Maxwell, White, and Adams. All of the claims against Defendants Southern Health Partners, Wilson, Strode, and Sanders have been dismissed. Further, as noted, Defendant Price has settled.

The parties have now filed various motions in limine. The Court will consider them below.

## II. DISCUSSION ON MOTIONS IN LIMINE

### A. Motions in Limine Filed by Defendant Leah Price [DN 168–169]

#### 1. Exclude Evidence Regarding Certain Damages [DN 168]

Defendant Leah Price moves the Court to exclude evidence regarding Plaintiffs' claims for: (1) loss of parental consortium, (2) lost wages and future income, and (3) attorneys' fees and costs. While Defendant Price has settled, the County Defendants and Defendant Adams have joined her motion, (Joinder in Mot. in Limine of Co-Def. [DN 175]; Joinder in Mot. in Limine of Co-Def. Leah Price [DN 181]), and the Court will consider it. For the following reasons, the motion is **DENIED**.

*Loss of Parental Consortium.* In the First Amended Complaint, Plaintiffs assert a claim for

loss of parental consortium. The Defendants argue that the Plaintiffs must be barred from presenting any evidence concerning that claim because they have failed to supplement their Initial Disclosures to identify an amount claimed and have further failed to identify an amount as an item of damages.

In support of their argument, the Defendants rely on Fed. R. Civ. P. 26(a)(1)(A)(iii), which requires parties to disclose "a computation of each category of damages claimed by the disclosing party," along with supporting evidentiary materials. The Defendants note that under the Federal Rules, if a party fails to disclose information sought in discovery or fails to supplement information, "the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); see Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., 388 F.3d 976, 983 (6th Cir. 2004) (noting that the exclusion of testimony is "automatic and mandatory under Rule 37(c)(1)" unless the non-disclosure is justified or harmless). In this case, the Defendants correctly note that the Plaintiffs failed to provide information concerning their loss of parental consortium claim prior to the passage of the pertinent discovery deadlines. The Defendants argue that this failure was unjustified and harmful, as the parties are now on the eve of trial and the Defendants have no information regarding this item of damages.

The Plaintiffs counter that the Defendants' motion should be denied, as the Defendants never called to Plaintiffs' attention their failure to specify the damages, and never moved to compel during the period of discovery. In support, the Plaintiffs rely on Judge Joseph M. Hood's recent decision in Carver v. Perry, No. 12-CV-131 (E.D. Ky. Jan. 25, 2013). In that case, Judge Hood considered a motion that sought to exclude proof of the plaintiffs' damages because the plaintiffs had failed to specify the amount they were seeking in their Rule 26 disclosures. Ultimately, Judge Hood refused to exclude such proof, instead ordering the plaintiffs to simply supplement their Rule 26 disclosures

to specify the damages sought. Judge Hood wrote:

> In reality, the present issue is a dispute which would have been better presented during the period of discovery as either a motion to compel or a motion for a protective order. While, as Defendant points out, the burden of establishing substantial justification and harmlessness falls on the disclosing party where there is a failure of disclosure, see Roberts *ex rel.* Johnson v. Galen of Virginia, Inc., 325 F.3d 776, 782 (6th Cir. 2003), the Court wonders at Defendant's failure to file a motion to compel during the period of discovery assigned in this case. **While the Court is not concluding that the issue was waived, Defendant's failure to raise it earlier during the course of this litigation is nearly as notable as Plaintiffs' failure to supplement - leaving the Court to wonder if Defendant ever conferred about this discovery issue with Plaintiffs which is necessary before seeking relief from the Court.** See Fed. R. Civ. P. 37(a)(1).

Id. at 3, n.1 (emphasis added). In this case, the Court finds that a similar conclusion is warranted.

Two days after receiving Defendant Price's June 3, 2013 motion, Plaintiffs supplemented their discovery responses to provide information regarding their loss of consortium claim. (Pls.' Supp. Resp. to Defs.' Interrogs. Regarding Damages [DN 184-3] 4.) The Court finds that Defendants have suffered no prejudice from this delay. Awards regarding loss of consortium damages are discretionary with the jury. See Loew v. Allen, 419 S.W.2d 734, 736 (Ky. 1967) (noting that it is within the jury's discretion not to allow damages for loss of consortium). Further, the Plaintiffs note that they will rely entirely on the testimony of the Plaintiffs, Mr. Finn's minor children, and exhibits already identified by the parties relevant to such issues. (See Pls.' Resp. to Defs.' Mots. in Limine [DN 184] 5.) With this in mind, the Court finds that the Defendants are prepared to rebut the Plaintiffs' claims that Mr. Finn's minor children benefited from, and have been injured by the loss of, his love, society, support, and companionship. The motion is **DENIED** in this respect.

*Lost Wages and Future Income.* In their Initial Disclosures, the Plaintiffs indicated that they would be seeking damages for lost wages and future income; however, they did not indicate a certain amount. (See Pl.'s Initial Disclosures [DN 168-2] 2.) Instead, the Plaintiffs indicated that they would

4

produce evidence of the amount through expert testimony. (See Pl.'s Initial Disclosures [DN 168-2] 2.) The Plaintiffs failed to indicate an amount or identify an expert concerning an amount before the passage of the pertinent discovery deadlines. According to the Defendants, this failure requires the Court to exclude evidence regarding Mr. Finn's lost wages and future income. The Court disagrees.

Two days after receiving Defendant Price's June 3, 2013 motion, Plaintiffs supplemented their discovery responses to provide information regarding Mr. Finn's lost wages and future income. (Pls.' Supp. Resp. to Defs.' Interrogs. Regarding Damages [DN 184-3] 3.) The Court finds that the Defendants have suffered no prejudice from this delay. As the Plaintiffs note, their claim is based on a simple mathematical formula supported by Mr. Finn's documented work and earnings history. The Plaintiffs do not claim that there would have been an increase in Mr. Finn's income over time—or that he would have enjoyed a longer-than-average work-life expectancy. (Id.; Pls.' Resp. [DN 184] 6.) Moreover, the Defendants have failed to cite, and the Court has been unable to find, any authority for the proposition that expert testimony on this issue is required. The motion is **DENIED** in this respect.

*Attorneys' Fees and Expenses.* In their Initial Disclosures, the Plaintiffs indicated that they would be seeking damages for attorneys' fees; however, they did not indicate a certain amount. (See Pl.'s Initial Disclosures [DN 168-2] 2.) The Defendants argue that the Plaintiffs should thus be precluded from pursuing attorneys' fees and expenses. But as the Plaintiffs correctly note, plaintiffs routinely seek recovery of attorneys' fees and expenses "as an element of 'costs' awarded to the prevailing party . . . ." See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988). Here, the Defendants never specifically requested that the Plaintiffs estimate their accumulated attorneys' fees and expenses prior to the passage of the pertinent discovery deadlines. It seems to the Court that

in light of this fact, the Plaintiffs had no reason to assume that the Defendants wanted an estimate.

However, to the extent that the Defendants were entitled to some estimation of accumulated fees and expenses, the Court finds that they have suffered no prejudice from any delay. Two days after receiving Defendant Price's June 3, 2013 motion, the Plaintiffs supplemented their discovery responses to provide information on attorneys' fees. (Pls.' Supp. Resp. to Defs.' Interrogs. Regarding Damages [DN 184-3] 4.) The supplementation shows that the fees and expenses incurred so far in this case exceed $200,000. (Id.) The motion is **DENIED** in this respect.

**2. Exclude Testimony of Richard Blondell, M.D. [DN 169]**

Defendant Leah Price moves the Court to exclude the testimony of Richard Blondell, M.D., the Plaintiffs' expert, as to the standard of care concerning the decision to transport Mr. Finn and its causal connection to his death. Essentially, Dr. Blondell testifies that Mr. Finn's condition required that he be transported to a hospital no later than 4:30 a.m. the day of his death. (Dep. of Richard D. Blondell [DN 169-3] 136–38.) According to Defendant Price, this testimony must be excluded, as it is based on speculation. Although the Court has been informed that Defendant Price has settled her claims in this case, at the pretrial conference, no other Defendants joined her motion.

Defendant Price has argued that Dr. Blondell's testimony is based on speculation because: (1) his opinions are partially based on a report which indicated that Mr. Finn was "delirious," despite the fact that the concepts of "delirium" and "confusion" are often confused; and (2) his opinions are partially based on a belief that the record is not always consistent with how sick an individual might be. However, any weakness in the underlying factual basis of an expert's testimony bears on the weight, as opposed to the admissibility, of the evidence. _In re_ Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted). In this case, the objections go to the weight of Dr.

Blondell's testimony. As such, they are overruled and the motion is **DENIED**.

**B. Motions in Limine by Defendants Warren County, Kentucky; William Baker; Greg Martin; Chad Whitaker; Tom Maxwell; and Allen White [DN 170–175]**

### 1. Exclude Punitive Damages [DN 170]

The County Defendants move the Court to preclude Plaintiffs from requesting that the jury award punitive damages. For the following reasons, this motion is **GRANTED** in part and **DENIED** in part.

*Punitive Damages Claims against Warren County and Individual Defendants in their Official Capacities.* The County Defendants argue that punitive damages are not recoverable against Warren County. In support, they cite Barnier v. Szentmiklosi, 810 F.2d 594, 598–99 (6th Cir. 1987), for the proposition that punitive damages are not recoverable against governmental entities in civil rights actions, such as those brought under § 1983. The Plaintiffs do not oppose the County Defendants' motion as to a punitive damages claim against Warren County. (See Pls.' Resp. [DN 184] 1.)

Further, because suits against government officials in their official capacities are treated as suits against the government itself, see Kentucky v. Graham, 473 U.S. 159, 165–66 (1985), the same bar against punitive damages applies equally to Plaintiffs' claims against the individual Defendants in their official capacities. The County Defendants' motion is **GRANTED** in part as to these issues.

*Punitive Damages Claims against Individual Defendants in their Individual Capacities.* The County Defendants next argue that the Plaintiffs should be barred from introducing punitive damages claims against the government officials in their individual capacities. In this respect, the County Defendants note that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade,

461 U.S. 30, 56 (1983). They then argue that the Plaintiffs have failed to produce evidence that the conduct of any individual defendant was either motivated by evil motive or intent, or involved a reckless or callous indifference to Mr. Finn's federally protected rights. According to the County Defendants, while the Court has allowed the Plaintiffs' deliberate indifference claims to proceed, the evidence does not support a finding that the deputy jailers acted with an evil motive or intent—or that they acted recklessly or callously toward Mr. Finn. To the contrary, the evidence shows that many of the deputy jailers observed Mr. Finn only once, with knowledge that he was under the care of medical staff.

As the Plaintiffs correctly note, this Court's July 27, 2012 Memorandum Opinion and Order offered no opinion as to whether the alleged deliberate indifference of Defendants Martin, Maxwell, Whitaker, or White met the level of recklessness or malice that would warrant an award of punitive damages on Plaintiffs' federal claims. (See Mem. Op. & Order [DN 133].) However, the Court denied the summary judgment motions of Defendants Adams, Baker, Martin, Maxwell, Whitaker, and White as to Plaintiffs' state gross negligence claims, holding that there are fact questions with respect to whether they were grossly negligent in this case. (Mem. Op. & Order [DN 133] 40–48.) Kentucky law provides that proof of gross negligence warrants a punitive damages instruction. See City of Middlesboro v. Brown, 63 S.W.3d 179, 181 (Ky. 2001).

With this in mind, the Court will determine whether a punitive damages instruction should be submitted to the jury after hearing all the evidence. The County Defendants' motion is **DENIED**.

### 2. Exclude Liability Insurance [DN 171]

The County Defendants move the Court to preclude the Plaintiffs from introducing evidence regarding their liability insurance coverage. In support, the County Defendants note that evidence

of the existence of liability insurance is not admissible under Fed. R. Evid. 411 when it is offered to prove that defendants acted negligently or wrongfully. The Plaintiffs do not oppose this motion. (See Pls.' Resp. [DN 184] 1.) Therefore, it is **GRANTED**.

### 3. Exclude Expert Report of E. Eugene Miller [DN 172]

The County Defendants move the Court to exclude the expert report of Plaintiffs' expert, E. Eugene Miller. In support, the County Defendants argue that written reports of expert witnesses that are prepared in anticipation of trial are generally inadmissible because they are considered hearsay. See Osborne v. Pinsonneault, 2009 WL 1046008, at *4 (W.D. Ky. Apr. 20, 2009) (citing Wright v. Premier Elkhorn Coal Co., 16 S.W.3d 570, 572 (Ky. App. 1999)). The Plaintiffs do not oppose this motion. (See Pls.' Resp. [DN 184] 1.) Therefore, it is **GRANTED**.

### 4. Exclude Medical Opinion Testimony [DN 173]

The County Defendants move the Court to prohibit Plaintiffs from questioning lay witnesses on Mr. Finn's medical condition. Specifically, the County Defendants object to lines of questioning asking whether the deputy jailers know when delirium tremens or alcohol withdrawal becomes sufficiently severe such that it requires hospitalization. In support, the County Defendants argue that the deputy jailers are not medical experts and cannot offer medical opinions under Fed. R. Evid. 702. According to them, the "only purpose in questioning the deputies in such manner is to make the suggestion to the jury that the deputies *should* know the answer and that, by implication, there must have been some failure in training." (Mot. in Limine Regarding Med. Op. Testimony [DN 173] 2.)

The Plaintiffs respond that the County Defendants' motion on this issue should be denied, as the Warren County Regional Jail's EMS policy specifies that alcohol withdrawal is a medical emergency which requires deputy jailers to take specifically-defined actions, presumably in response

to observing an inmate's symptoms. According to the Plaintiffs, what the deputy jailers knew about certain conditions, and the symptoms of those conditions, is thus critically relevant to the Plaintiffs' proof of their failure-to-train claim against Warren County. The Court agrees. In the present case, the Plaintiffs seek to ask the jailers about their knowledge of the symptoms of alcohol withdrawal or delirium tremens, as well as about their knowledge of when such symptoms indicate a need for hospitalization. This knowledge goes to the heart of the Plaintiffs' failure-to-train claim, as it shows whether or not the jailers had the requisite training to carry out the Jail's EMS policy. As Plaintiffs correctly note, the jailers are not being called as medical experts to testify as to what the symptoms of alcohol withdrawal or delirium tremens are. Instead, they are being called to determine whether they received sufficient training to be able to implement the Jail's EMS policy. Their testimony is admissible to support Plaintiffs' claims. Accordingly, the County Defendants' motion is **DENIED**.

### 5. Exclude Hearsay Evidence [DN 174]

The County Defendants move the Court to preclude the Plaintiffs from introducing any hearsay statements at trial, including: (1) hearsay statements allegedly made by any deputy jailer and/or former deputy jailer at the Warren County Regional Jail; and (2) hearsay statements allegedly made by any inmate and/or former inmates of the Warren County Regional Jail. According to the County Defendants, such statements are inadmissible under Fed. R. Evid. 801 and 802 and do not meet the requirements of any of the hearsay exceptions listed in Fed. R. Evid. 803 or 804. However, the County Defendants have not identified any specific statements at issue; thus, the Court cannot determine whether any of the exceptions to the general hearsay prohibition apply. While the parties are expected to comply with the Federal Rules of Evidence, the Court finds it unnecessary to issue a blanket prohibition against the introduction of hearsay. After all, "[o]rders in limine which exclude

broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). The County Defendants' motion is **DENIED**. Such objections are better left for trial.

### 6. Exclude Evidence Regarding Certain Damages [DN 175]

The County Defendants joined in Defendant Leah Price's motion asking the Court to exclude evidence regarding Plaintiffs' claims for: (1) loss of parental consortium, (2) lost wages and future income, and (3) attorneys' fees and costs. (See Joinder in Mot. in Limine of Co-Def. [DN 175].) For the reasons set forth above, their motion is **DENIED**.

## C. Motions in Limine by Defendant John Adams, M.D. [DN 176, 181]

### 1. Exclude Medical Testimony Not Stated in Terms of "Probability"

Defendant Adams states that the Plaintiffs may seek to introduce testimony which infers that negligence or causation on the part of Dr. Adams was a "possibility" rather than a "probability." He moves the Court to preclude any such testimony. In support, Dr. Adams cites the principle that a plaintiff in a negligence action must prove that it is more likely than not that the plaintiff's injury was caused by the defendant's negligence. See Sakler v. Anesthesiology Assocs., P.S.C., 50 S.W.3d 210, 213–14 (Ky. App. 2001). Dr. Adams argues that allowing a reference to "possibility" would unfairly influence a jury's determination on whether the Plaintiffs met their ultimate burden of proof.

The Plaintiffs do not dispute that they bear the burden of proving that Defendants' acts or omissions more likely than not caused or contributed to Mr. Finn's death. However, Plaintiffs argue that an order which bars all "medical testimony" unless stated in terms of "probability" is too broad, as a "possibility" can be relevant in a medical context independent of an opinion on causation.

In this case, Dr. Adams fails to cite any excerpt from any report or deposition where one of

the Plaintiffs' expert witnesses opines that he cannot state within a reasonable degree of medical probability that Mr. Finn would have survived had the Defendants taken him to a hospital. The Court refuses to speculate as to the testimony Dr. Adams believes to be objectionable. While the Court agrees with Dr. Adams that causation must generally be shown in terms of probability and not mere possibility, he has failed to highlight testimony that violates this rule. Because "[o]rders in limine which exclude broad categories of evidence should rarely be employed," Sperberg, 519 F.2d at 712, Defendant Adams' motion on this issue is **DENIED**. Any such objections are better left for trial.

### 2. Exclude Punitive Damages Testimony

Defendant Adams next argues that the Court should not allow the Plaintiffs to introduce any evidence regarding punitive damages against him because Plaintiffs have not shown that he exhibited a "wanton or reckless disregard" to Mr. Finn's life or safety. See Williams v. Wilson, 972 S.W.2d 260, 263 (Ky. 1998) (noting that for a punitive damages award, "there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by a 'wanton or reckless disregard for the lives, safety, or property of others'"). According to Dr. Adams, neither the expert witness disclosures of the Plaintiffs' experts, nor their deposition testimony, contain opinions that Dr. Adams' actions were willful, wanton, malicious, grossly negligent, or reckless.

Importantly, however, the Court did deny the summary judgment motion of Dr. Adams as to Plaintiffs' state gross negligence claims. (See Mem. Op. & Order [DN 133] 40–48.) Kentucky law provides that proof of gross negligence warrants a punitive damages instruction. See City of Middlesboro, 63 S.W.3d at 181. As previously noted, the Court finds that the better approach is to consider the issue of whether a punitive damages instruction should be submitted to the jury on the

Plaintiffs' gross negligence claim after it has heard all the evidence. Defendant Adams' motion with respect to this issue is **DENIED**.

### 3. Exclude Standard of Care Testimony from Witnesses not Disclosed as Experts

Defendant Adams moves the Court to prohibit medical opinion testimony by any witnesses who have not been disclosed as experts. In support, Dr. Adams argues that the probative value of any admission of standard-of-care testimony from a witness who was not disclosed as an expert would be far outweighed by the prejudice suffered, constituting a violation of Fed. R. Evid. 403. Plaintiffs do not oppose this portion of Dr. Adams' motion. (See Pls.' Resp. [DN 184] 1.) Thus, the motion is **GRANTED** with respect to this issue.

### 4. Exclude Clips or Sound Bites from Depositions without Having to Provide Context

Defendant Adams moves the Court to prohibit Plaintiffs from playing "snippets" or reading portions of depositions without having to provide context for those portions. In support, Dr. Adams cites Owensboro Mercy Health Sys. v. Payne, 24 S.W.3d 675, 678–79 (Ky. App. 1999), for the proposition that courts should avoid presenting evidence out of context that can confuse issues or mislead a jury. At the pretrial conference, the parties stated that all the testimony would be live; the parties will not rely on testimony via depositions. Therefore, Dr. Adams' motion is **DENIED**.

To the extent that Dr. Adams' motion goes to the use of deposition testimony or transcripts as impeachment, the Court finds that Plaintiffs cannot be expected to anticipate, at this time, what portions of depositions might have to be utilized for impeachment purposes. It is incumbent upon the parties to be familiar with the discovery in this case. If, at trial, the Plaintiffs introduce testimony that Dr. Adams believes is taken out of context, it is his duty to make an objection at that time.

### 5. Exclude Testimony that Defendant is Insured against Liability

Defendant Adams moves the Court to preclude the Plaintiffs from introducing any evidence regarding his medical malpractice liability insurance coverage. In support, Dr. Adams notes that evidence of the existence of liability insurance is not admissible under Fed. R. Evid. 411 when it is offered to prove that a defendant acted negligently or wrongfully. The Plaintiffs do not oppose Dr. Adams' motion with respect to this issue. (<u>See</u> Pls.' Resp. [DN 184] 1.) As such, it is **GRANTED**.

### 6. Exclude Expert Testimony beyond Discovery Depositions or Disclosures

The Plaintiffs have disclosed Richard Blondell, M.D. and Eugene Miller as experts in this matter. Defendant Adams moves the Court to exclude any expert testimony at trial which exceeds the scope of these experts' reports or discovery depositions. According to Dr. Adams, to "allow the Plaintiffs to reorganize and refine their theories of liability against [him] during the trial of this matter, beyond their expert reports and discovery depositions, would unduly prejudice Dr. Adams . . . ." (Def. John Adams, M.D.'s, Mots. in Limine [DN 176] 5.) Plaintiffs respond by arguing that counsel are not entitled to a "safety net" to protect them from asking a question in cross-examination that fairly opens the door to additional opinions.

The Court agrees with Dr. Adams that experts must generally testify within the scope of their expert reports or discovery depositions. This principle is implicit in Fed. R. Civ. P. 26(a)(2)(B) and 26(e)(1), which "require disclosures **in advance of trial** of the bases and reasons for an expert's opinions." <u>See</u> <u>Asher v. Unarco Material Handling, Inc.</u>, 2008 WL 2596612, at *2 (E.D. Ky. June 25, 2008) (emphasis added). However, Dr. Adams seeks a broad order prohibiting *any* additional opinions from the Plaintiffs' experts. The Court refuses to speculate as to the nature of any additional opinions which the Plaintiffs' experts might seek to admit. Thus, Dr. Adams' motion is

**DENIED.** The Court believes it would be best to handle these issues through objections at trial.

### 7. Exclude Evidence of Expert Witness Criticism that Does Not Rise to the Level of a Breach of the Standard of Care of Injuries Not Related to Negligence

Dr. Adams moves the Court to preclude the Plaintiffs' expert witnesses from testifying as to any injury to Mr. Finn which is not within reasonable medical probability causally connected to a breach of the standard of care. Dr. Adams argues that to permit the Plaintiffs' experts to testify "as to a breach of a standard of care not within a reasonable medical probability to have caused an alleged injury in this case would be a violation of FRE 403, in that any relevance would be far outweighed by prejudice to [him]." (Id. at 6.) Generally speaking, all opinions concerning causation are to be stated within a reasonable medical probability. However, the Court agrees with Plaintiffs' contention that Dr. Adams' motion paints with too broad a brush. Objections along these lines are better reserved for trial so the Court will know the context in which the evidence is offered. Dr. Adams' motion is thus **DENIED** in this respect.

### 8. Exclude Mr. Finn's Family Members and Lay Witnesses from Testifying about Issues Unrelated to the Allegations Leveled against Dr. Adams

Dr. Adams moves the Court to prohibit Mr. Finn's family and lay witnesses from testifying about any ancillary or collateral knowledge that they may have regarding the case which does not bear directly on the Plaintiffs' allegations against him. According to Dr. Adams, the Plaintiffs have alleged medical negligence against him and only medical issues should be considered by the jury. Other issues are irrelevant or, if relevant, are highly prejudicial and should not be introduced at trial.

However, the Court again agrees with Plaintiffs that this motion goes too far, as Dr. Adams is not the only Defendant in this case. Other Defendants include non-medical personnel. Asking the Court to prohibit Mr. Finn's family and all other lay witnesses from testifying to issues unrelated

to the allegations against Dr. Adams is improper, as those issues may very well be related and relevant to the Plaintiffs' allegations against the other Defendants. Without context, it is impossible for the Court to rule in limine on these issues. Therefore, Dr. Adams' motion is **DENIED**, and all related objections should be made at trial.

### 9. Exclude Testimony from Plaintiffs and/or Plaintiffs' Family Members regarding the Financial Condition of the Parties

Dr. Adams moves the Court to prohibit testimony from Plaintiffs and/or Plaintiffs' family members regarding any party's current financial condition. In support, Dr. Adams cites Kentucky law that "the parties may not present evidence or otherwise advise the jury of the financial condition of either side of the litigation." Hardaway Mgmt. Co. v. Southerland, 977 S.W.2d 910, 916 (Ky. 1998). The Plaintiffs do not oppose this portion of Dr. Adams' motion. (See Pls.' Resp. [DN 184] 1.) As such, the motion is **GRANTED** with respect to this issue.

### 10. Exclude Plaintiffs from Testifying Regarding any Hearsay Statements made by Physicians, Care Providers, Jail Staff, or Other Individuals

Dr. Adams moves the Court to preclude Plaintiffs from introducing any hearsay testimony by any lay witness, including Plaintiffs, regarding any statements made to them by any physician, care provider, jail staff, or other individual. Specifically, Dr. Adams argues that Fed. R. Evid. 801 and 802 prohibit the Plaintiffs, or any other lay witnesses, from testifying regarding conversations or statements made by others. The Court finds, however, that Dr. Adams has failed to identify any specific statements at issue; thus, the Court cannot determine whether any of the exceptions to the general hearsay prohibition apply. As discussed above, while the parties are expected to comply with the Federal Rules of Evidence, the Court finds it unnecessary to issue a blanket prohibition against the introduction of hearsay. Dr. Adams' motion is **DENIED** in this respect.

Further, Dr. Adams argues that the Plaintiffs, and any other lay witnesses, are not physicians and should not be permitted to speculate as to Mr. Finn's medical condition. According to him, the Plaintiffs and other lay witnesses do not have the requisite background or expertise to provide expert testimony in the form of medical diagnoses or opinions. However, the Court again finds that Dr. Adams has failed to highlight any specific statements at issue; thus, it cannot determine what specific testimony Dr. Adams seeks to prohibit. While the parties are expected to comply with the Federal Rules of Evidence, it is unnecessary for the Court to issue the blanket prohibition sought by Dr. Adams. This is especially true since Fed. R. of Evid. 602 allows lay witness testimony if the witness has personal knowledge of a matter. Indeed, while lay witnesses may not be permitted to provide expert testimony in the form of medical diagnoses, they may be permitted to testify as to their own perceptions and observations of Mr. Finn. Dr. Adams' motion is **DENIED** in this respect.

**11. Exclude Introduction of Expert Reports into Evidence**

Dr. Adams moves the Court to prohibit Plaintiffs from seeking the admission of any expert reports. In support, Dr. Adams notes that such reports are inadmissible because they are considered hearsay. See Wright, 16 S.W.3d at 572. The Plaintiffs do not oppose this portion of Dr. Adams' motion. (See Pls.' Resp. [DN 184] 1.) Accordingly, it is **GRANTED**.

**12. Exclude Family Photographs and Videos from the Trial**

Dr. Adams moves the Court to exclude family photographs and videos from trial. According to Dr. Adams, the fact that Mr. Finn has a family "is completely inconsequential to those allegations of negligence," and the "only thing that these photographs can do is inflame the jury, making them feel sorry for Mr. Finn and his family." (Def., John Adams, M.D.'s, Mots. in Limine [DN 176] 10.)

The Plaintiffs have stated that they have no family videos to introduce at the trial of this case.

(See Pls.' Resp. to Defs.' Mots. in Limine [DN 184] 11.) However, according to the Plaintiffs, the jury is entitled to see photographs of Mr. Finn in order to put a face with a name (and, specifically, to show that Mr. Finn was a living human being). Further, Plaintiffs state that photographs of Mr. Finn with his children are relevant to their loss of consortium claims in this case. The Court agrees.

Kentucky courts have often permitted the introduction of life photographs of victims to prove that the victims were living persons. See, e.g., Tamme v. Commonw., 973 S.W.2d 13, 36 (Ky. 1998) (permitting the victims' mothers to introduce life photographs of their deceased sons). Further, courts have noted that loss of consortium is "based on the idea that a child has a right to compensation for the loss of parental love, security, care, and nurturing." Presley v. CCS of Conway, 2004 WL 1179448, at *2 (W.D. Ky. May 18, 2004) (citing Giuliani v. Guiler, 951 S.W.2d 318, 319–20 (Ky. 1997)). The proposed photographs of Mr. Finn with his children provide evidence of the type of love, security, care, and nurturing that he may have provided if released from the Warren County Regional Jail. Dr. Adams' motion on this issue is **DENIED**.

### 13. Exclude Introduction of Dr. Adams' Compensation as Medical Director at Warren County Detention Center (Or Any of the Other Jails where Dr. Adams Served as Medical Director) and to Exclude the Number of Jails where Dr. Adams Worked as Medical Director

Defendant Adams moves the Court to prohibit any testimony from Plaintiffs regarding his compensation as the Medical Director at the Warren County Detention Center (or any of the other jails where he served as the Medical Director). Defendant Adams further moves the Court to prohibit testimony from the Plaintiffs regarding the number of jails where he worked as a Medical Director. According to Dr. Adams, such testimony is irrelevant because it "has nothing to do with the medical facts at issue in this case." Further, even if such testimony is relevant, it "would be offered solely for the purpose of casting Dr. Adams in a derogatory light in hopes of inflaming the passions of the

jury and arousing such anger and disdain for him that it would be impossible to receive a fair trial in this action. (Def., John Adams, M.D.'s, Mots. in Limine [DN 176] 12.) The Court disagrees.

As the Plaintiffs correctly note, Dr. Adams remains a Defendant in this case on the Plaintiffs' negligence and gross negligence claims arising from his alleged failure to facilitate the education of nurses at the Warren County Regional Jail. (See Mem. Op. & Order [DN 133] 46–47.) The Court finds that in support of these claims, the Plaintiffs should be allowed to present evidence to the jury which suggests Dr. Adams undertook a high level of work and responsibility as Medical Director, knowing that it would likely be impossible for him to meet his obligations, solely for the income he would enjoy as a consequence. Contrary to Dr. Adams' contention, such evidence is relevant to the Plaintiffs' negligence and gross negligence claims. Further, the prejudice to Dr. Adams arising from such evidence is not outweighed by its probative value. Dr. Adams' motion is **DENIED** with respect to this issue.

### 14. Exclude Evidence of Other Lawsuits

Defendant Adams moves the Court to prohibit any evidence that he may have been named as a Defendant in other medical malpractice cases. According to Dr. Adams, any efforts to introduce such evidence "would be sorely misguided and would amount to nothing more than impermissible character evidence." (Def., John Adams, M.D.'s, Mots. in Limine [DN 176] 12–13.) The Plaintiffs counter that such evidence should not be prohibited at trial, as it is relevant to show that this is only one of many cases in which Dr. Adams was unaware of an inmate's serious medical condition until he or she died or was rushed to a hospital. The Court finds Dr. Adams' argument more persuasive.

Part of Plaintiffs' negligence claim against Dr. Adams is that he was not aware of Mr. Finn's serious medical condition until after he was dead. The Plaintiffs wish to introduce evidence of other

subsequent instances in which inmates have died under Dr. Adams watch before he was even aware of their medical concerns. The Court finds that this is impermissible under Fed. R. Evid. 404(b). Plaintiffs are attempting to introduce evidence of other acts to show Dr. Adams' propensity for unawareness and, ultimately, negligence. Whether he was negligent in those other instances does tend to prove that he was negligent in this instance. Further, the Court finds that the probative value of this evidence is substantially outweighed by a danger of unfair prejudice. His motion is **GRANTED**.

The Plaintiffs argue that this evidence can be used as impeachment. The Court agrees as a general matter. However, only if Dr. Adams first opens the door to such an inquiry will the Court allow such questioning. In other words, Plaintiffs will not be allowed to bring in through the back door evidence that cannot enter through the front. Plaintiffs cannot question Dr. Adams in a manner that will allow them, based on "impeachment" grounds, to introduce this impermissible other acts evidence against him in the hope that the jury will miss the subtle distinction between impeachment and substantive evidence. The purpose would not be to impeach Dr. Adams but to put in impermissible evidence against him. In the event counsel believes Dr. Adams has opened the door to such questioning, he shall first seek permission from the Court before addressing any questions to Dr. Adams along these lines.

**15. Exclude Evidence of "Chance" or "Possibility" Pertaining to Mr. Finn's Survival**

Dr. Adams moves the Court to preclude the Plaintiffs from arguing or otherwise offering any evidence from their expert witnesses of "chances of survival," "possibilities," or other hypothetical interventions or courses which may have changed the outcome in this case. Dr. Adams bases this motion on the fact that Kentucky has declined to recognize the doctrine of "loss of chance." See Kemper v. Gordon, 272 S.W.3d 146, 153 (Ky. 2008). He also bases this motion on the fact that the

Plaintiffs have the burden to prove the elements of negligence within a reasonable degree of medical probability. See <u>Sackler v. Anesthesiology Assocs., P.S.C.</u>, 50 S.W.3d 210, 213 (Ky. App. 2001).

As a general matter, the Court agrees with Dr. Adams. Kentucky has declined to recognize the doctrine of "loss of chance," and all opinions related to medical negligence must be stated within a reasonable degree of medical probability. However, Dr. Adams' motion is overly broad to rule on in limine. Thus, all such objections shall be made at trial. His motion as to this issue is **DENIED**.

### 16. Exclude Evidence or Arguments that Dr. Adams was the "Captain of the Ship" and/or that He Bore "Ultimate" Responsibility for Mr. Finn's Care and Treatment

Defendant Adams moves the Court to preclude the Plaintiffs from offering any testimony that Dr. Adams was the "captain of the ship" or that he bore "ultimate responsibility" for the acts and/or omissions of other persons (i.e. the employees of the Warren County Detention Center or Southern Health Partners). In support, Dr. Adams notes that Kentucky courts do not recognize the validity or legal viability of the "captain-of-the-ship doctrine." See <u>Tucker v. Women's Care Physicians of Louisville, P.S.C.</u>, 381 S.W.3d 272, 277 (Ky. 2012).

The Court understands, and agrees with, Dr. Adams that he cannot be liable for the conduct of other medical room personnel under the "captain-of-the-ship doctrine." See <u>Nazar v. Branham</u>, 291 S.W.3d 599, 607–08 (Ky. 2009) (noting that absent facts showing the existence of an agency relationship, a surgeon cannot be vicariously liable for negligent acts of the nurses in the operating room). However, the Court finds that Plaintiffs will still be entitled to introduce evidence regarding Dr. Adams' supervisory role in an attempt to hold him responsible for his own negligence. Here, Plaintiffs are seeking to show that: Dr. Adams was the Medical Director at the Warren County Regional Jail; as Medical Director, he had oversight responsibilities under his contract with Southern Health Partners; and he was responsible for the overall operation of the Jail's medical services

program. This evidence is being introduced to show that Dr. Adams had a duty to train and supervise the medical staff at the jail, that he breached that duty, and that such failure was a substantial factor in causing Mr. Finn's death. Dr. Adams' motion with respect to this issue is **DENIED**.

### 17. Exclude Evidence Regarding Certain Damages or, in the Alternative, Objection to Plaintiffs' Supplemental Response to Defendants' Interrogatories Regarding Loss of Earning Capacity [DN 181]

Dr. Adams joined Defendant Leah Price's motion asking the Court to exclude evidence regarding Plaintiffs' claims for: (1) loss of parental consortium, (2) lost wages and future income, and (3) attorneys' fees and costs. (See Joinder in Mot. in Limine of Co-Def. Leah Price or, in the Alt., Obj. to Pls.' Supp. Resp. to Defs.' Interrogs. Regarding Loss of Earning Capacity [DN 181].) For the reasons set forth above, this motion is **DENIED**.

## D. Motions in Limine by Plaintiffs [DN 178]

### 1. Exclude Written Reports and Curriculum Vitae of Defendants' Experts

The Plaintiffs move the Court to exclude the written reports and the curriculum vitae of the Defendants' experts. In support, the Plaintiffs suggest that such evidence will be cumulative of the experts' trial testimony. The Defendants have no objection to the exclusion of the written reports of the Plaintiffs' and the Defendants' expert witnesses. (See Defs.' Resp. to Pls.' Mots. in Limine [DN 187] 1; Def., John Adams, M.D.'s, Objs. to Pls.' Mots. in Limine [DN 182].) Thus, as to these written reports, the Plaintiffs' motion is **GRANTED** in part.

As stated at the pretrial conference, the Court will allow the parties to admit their experts' curriculum vitae into evidence, provided that counsel limit direct examination on the experts' qualifications. Therefore, the Plaintiffs' motion is **DENIED** in part.

## 2. Exclude Testimony that Defendants' Conduct Was (Or Was Not) "Deliberately Indifferent"

The Plaintiffs move the Court to exclude any testimony that the Defendants' conduct was, or was not, "deliberately indifferent." In support, they note that deliberate indifference is a legal term involving issues of state of mind that can be resolved only by a jury. See Berry v. City of Detroit, 25 F.3d 1342, 1353–54 (6th Cir. 1994). But as the County Defendants note, the Court has previously addressed this issue in its Memorandum Opinion and Order which granted in part and denied in part the Plaintiffs' motion to exclude Donald Leach as an expert at trial. (See Mem. Op. & Order [DN 132] 7–8.) The parties are expected to comply with this Court's previous ruling. Because the Plaintiffs' current motion is redundant as to this issue, it is **DENIED** as moot.

## 3. Exclude Testimony that Defendants Did (Or Did Not) Comply with Law

The Plaintiffs move the Court to exclude any testimony that the Defendants did, or did not, comply with the law. According to Plaintiffs, such opinions constitute legal conclusions, invading the Court's duty to instruct the jury as to the applicable law. See In re Comm. Money Ctr., Inc., 737 F. Supp. 2d 815, 830 (N.D. Ohio 2010) (noting that the court would not permit expert witnesses to express legal conclusions or opine as to ultimate issues of fact).

The Defendants do not dispute that testimony offering nothing more than a legal conclusion (i.e. testimony that does little more than tell a jury what result to reach) is properly excludable. (See Defs.' Resp. to Pls.' Mots. in Limine [DN 187] 2; Def., John Adams, M.D.'s, Objs. to Pls.' Mots. in Limine [DN 182].) But the County Defendants anticipate that the Plaintiffs' motion also seeks to exclude testimony such as whether the deputy jailers received all of the training required under state regulations—or whether they complied with all of the state statutory and regulatory requirements. According to the County Defendants, such evidence is relevant and centrally

important to whether the training received by the deputy jailers was deficient.

Because the Plaintiffs fail to identify specific testimony that they seek to exclude, the Court finds it difficult to rule on this motion. While the Court agrees with the basic principle that it should exclude testimony offering nothing more than a legal conclusion, it finds that the Plaintiffs' motion is simply too broad. Conceivably, the Plaintiffs' motion could be construed in line with the County Defendants' anticipations, and as those Defendants note, such evidence is relevant and important to whether the training received by the deputy jailers was deficient. Accordingly, the Plaintiffs' motion is **DENIED** as to this issue. The Court notes that if the Defendants introduce evidence or testimony at trial that the Plaintiffs find objectionable, the Plaintiffs should object at that time.

### 4. Exclude Testimony or Argument Concerning Standard Medical or Correctional Practices that Contradict the Jail's Written Policies and Procedures

The Plaintiffs move the Court to exclude any testimony or argument regarding any standard medical or correctional practices that contradict the Warren County Regional Jail's written policies and procedures. According to the Plaintiffs, the Jail's policies specifically define alcohol withdrawal to be a medical emergency and specifically describe the steps to be taken during such an emergency. The Defendants should not be allowed to introduce evidence that standard medical or correctional practices, laws, or regulations allowed them to do less than what was required by the Jail's policies.

The Defendants raise several arguments in response. First, the County Defendants note that the Plaintiffs cite no cases supporting their position and fail to state any evidentiary grounds for exclusion. According to the County Defendants, the Plaintiffs' motion must be denied on this basis, as the party opposing the introduction of evidence bears the burden of proving admissibility.

Second, the County Defendants argue that widely accepted medical or correctional practices may be relevant to a determination of whether the Defendants acted reasonably in the circumstances

presented. For example, they note that one of the ultimate issues for the jury to decide is whether the Defendants acted negligently (and, thus, whether they acted consistently with a competent deputy jailer or medical provider in the same or similar circumstances). The County Defendants suggest that evidence of the applicable standard of care is certainly relevant, admissible evidence that will assist the jury in making that determination.

Defendant Adams makes a similar argument. He notes that for a jury to determine whether he was negligent in his role as Medical Director, it must determine what a reasonably competent medical director at a jail would do under the same or similar circumstances, which requires analysis of the proper standard of care. According to Dr. Adams, the Plaintiffs have the burden to prove that the policies and procedures of the Warren County Detention Center and of Southern Health Partners represent the medical standard of care in a correctional setting—and that Dr. Adams failed to follow those policies and procedures. A jury could find that although the identified policies and procedures comply with the standard of care, they are not the standard of care in and of themselves.

The Court agrees with Defendants. In this case, it is the jury's task to decide whether the policies and procedures of the Warren County Detention Center and of Southern Health Partners comply with or represent the standard of care. The Sixth Circuit has repeatedly recognized that while internal regulations and standard operating procedures are relevant in considering the scope of the duty of care owed, they do not necessarily create or define the precise scope of the duty owed. See Keir v. United States, 853 F.2d 398, 413–14 (6th Cir. 1988); Estes v. King's Daughters Med. Ctr., 59 Fed. App'x 749, 756–57 (6th Cir. 2003). The Plaintiffs' motion is **DENIED** as to this issue.

### 5. Exclude Testimony or Argument Concerning Standard Medical or Correctional Practices that Contradict SHP's Written Policies and Procedures

Similarly, the Plaintiffs move the Court to exclude any testimony or argument concerning

standard medical or correctional practices that contradict the written policies and procedures of Southern Health Partners. For the reasons set forth above, the motion is **DENIED** as to this issue.

### 6. Exclude Testimony or Argument that SHP's Written Policies and Procedures Did Not Apply to Defendant Adams

The Plaintiffs move the Court to exclude any testimony that the written policies of Southern Health Partners did not apply to Defendant Adams. According to the Plaintiffs, Dr. Adams' contract with SHP specifically obligates him to "support and adhere to SHP procedures and policies," so Dr. Adams should not be permitted to claim that SHP's procedures and policies do not apply to him. But the Court finds that it would be improper to grant the Plaintiffs' motion. Doing so would potentially prohibit Dr. Adams from putting forth an important defense. Plaintiffs' motion is thus **DENIED**.

In the Court's opinion, the Plaintiffs' motion seeks an order prohibiting any evidence that Dr. Adams' actions were proper, despite being inconsistent with SHP's procedures and policies. In other words, the Court believes that Plaintiffs essentially seek a ruling that since SHP's policies applied to Dr. Adams, any of his actions that were contrary to the policies were necessarily improper. However, in his response to the Plaintiffs' motion, Dr. Adams notes that the applicable SHP policy provides that the manual "is not to be construed as final judgment in place of prudent medical services and/or procedures." (Def., John Adams, M.D.'s, Objs. to Pls.' Mots. in Limine [DN 182] 3–4.) The Court finds that Dr. Adams should be allowed to testify to the effect that the policies did not supersede his independent clinical judgment as a physician. It will then become a question of fact for the jury whether Dr. Adams acted properly in his role as Medical Director.

### 7. Exclude Testimony or Argument that the Jail's Policies were Superceded or Rendered a Nullity by those of SHP

The Plaintiffs move the Court to exclude any testimony or argument that the Jail's policies

were superseded or rendered a nullity by those of SHP. In support, the Plaintiffs argue that there is

no evidence that the Jail's policies were superseded or rendered a nullity by the County's contract

with SHP or SHP's policies and procedures. The Defendants do not dispute this portion of the

Plaintiffs' motion. (<u>See</u> Defs.' Resp. to Pls.' Mots. in Limine [DN 187]; Def., John Adams, M.D.'s,

Objs. to Pls.' Mots. in Limine [DN 182].) Therefore, it is **GRANTED** as to this issue.

### 8. Exclude Testimony or Argument that Defendants Had No Duty to Monitor Mr. Finn for Alcohol Withdrawal, that the Jail Defendants were Entitled to Rely upon the SHP Defendants to Do So, or that the SHP Defendants were Entitled to Rely upon the Jail Defendants to Do So

The Plaintiffs move the Court to exclude any testimony or argument that the Defendants had

no duty to monitor Mr. Finn for alcohol withdrawal, that the County Defendants were entitled to rely

upon the SHP Defendants to do so, or that the SHP Defendants were entitled to rely upon the County

Defendants to do so. In support, the Plaintiffs argue that 501 KAR 3:060 § 2, coupled with the Jail's

policy deeming alcohol withdrawal to be a medical emergency, combined to create a ministerial duty

on the part of all Defendants to monitor any inmates in detox cells every twenty minutes for alcohol

withdrawal and take the appropriate action specified by the Jail's policies. In support, the Plaintiffs

rely on <u>Hedgepath v. Pelphrey</u>, wherein the Court held that the jailers, under the facts of the case

and policies at issue, were not entitled to qualified immunity and were required check on intoxicated

detainees every twenty minutes. No. 12-5314, at *9 (6th Cir. Apr. 5, 2003). The County Defendants

respond that evidence concerning the relationship between SHP and the Jail, and the division of

duties between the parties, is critical evidence that should be permitted. According to them, such

evidence will allow the jury to understand how care is provided at the Warren County Regional Jail.

In this case, the Court agrees with the Plaintiffs, in part, that the Defendants should not be

permitted to argue that they had no duty to monitor Mr. Finn. After all, it has long been recognized

that "[t]he law imposes the duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody . . . ." <u>Lamb v. Clark</u>, 138 S.W.2d 350, 352 (Ky. 1940); <u>see also</u> Ky. Rev. Stat. § 71.040 (noting that a jailer "shall treat [prisoners] humanely"). However, the Court seriously doubts that the Defendants will argue that they had no duty. Instead, the Court anticipates that their arguments will focus on whether they breached that duty. As to the Defendants' arguments regarding breach, the Court finds that evidence concerning the relationship between SHP and the Jail, and the division of duties between the parties, is critical. Therefore, the Plaintiffs' motion is **DENIED** as to this issue.

### III. Discussion on Motion for Partial Summary Judgment [DN 185]

The Plaintiffs have filed a partial summary judgment motion, asking the Court to enter partial summary judgment that: (1) the deputy jailers violated their ministerial duties to Mr. Finn; and (2) Warren County failed to train its officers on its EMS policy. According to the Plaintiffs, while the deadline for dispositive motions in this case has passed, "there is no reason for the Court to take its time and that of the jury—much less risk confusing the jury—with the trial of issues already resolved . . . ." (Pls.' Mot. for Partial Summ. J. [DN 185] 1.) For the following reasons, the Plaintiffs' motion is **DENIED.**

#### 1. Partial Summary Judgment that the Deputy Jailers Violated their Ministerial Duties

Plaintiffs' partial summary judgment motion asks the Court to enter judgment that the deputy jailers violated their ministerial duties to Mr. Finn (i.e. that the jailers violated the EMS Policy). In support, the Plaintiffs first cite the Court's previous Memorandum Opinion and Order, in which the Court found that because each of the deputy jailers acknowledged their awareness that Mr. Finn was experiencing alcohol withdrawal, their actions regarding Mr. Finn's supervision were ministerial

in nature. (See Mem. Op. & Order [DN 133] 43.) The Plaintiffs then argue that because the jailers have each admitted that they did not notify an EMT, doctor, or nurse of Mr. Finn's condition, the Court must find that the Jail's EMS policy was violated. (See Emergency Med. Servs. Policy & Procedure [DN 185-1] (requiring an officer confronted with a medical emergency to "call the EMT, Doctor or Nurse . . . and relay the emergency information").) The Defendants counter that when the deputy jailers learned that Mr. Finn was experiencing medical problems, the nurse on duty was notified of the issue and, when they deemed it necessary, Mr. Finn was moved to a medical observation cell. These facts find support in the record. (See Mem. Op. & Order [DN 133] 13–20.) As such, Defendants urge the Court to refuse to issue a ruling that the EMS policy was violated.

The Court begins by noting that there are questions of fact as to whether the EMS Policy was violated, thus precluding summary judgment. The Plaintiffs' motion is **DENIED** as to this issue. The Court also notes, however, that the parties' arguments are off-point.

The important question in this matter is not whether the Defendants complied with the EMS Policy. Instead, the questions are whether the Defendants were deliberately indifferent to Mr. Finn's serious medical needs—and whether they were negligent and/or grossly negligent with respect to Mr. Finn. In this summary judgment motion, the Plaintiffs seem to indicate that whether the Defendants complied with the EMS Policy will be determinative of the Plaintiffs' negligence claims, allowing Plaintiffs to establish a breach of the Defendants' duty. But this is not the case. Instead, it will be the jury's task to decide whether Defendants were deliberately indifferent, negligent, and/or grossly negligent after considering *all* the policies, the facts, and the relationship between the jailers and others.

Likewise, to the extent that Plaintiffs' motion seeks a determination that the jailers acted

negligently, it is without merit. Even if a part of the EMS Policy was violated, this violation of the jail's internal policy does not constitute negligence per se. See Flechsig v. United States, 991 F.2d 300, 304 (6th Cir. 1993) (holding that the violation of a written statement that constituted a portion of the Bureau of Prisons' internal operating procedures could not be said to be negligence per se).

The Court notes that the Plaintiffs' reliance on Hedgepath v. Pelphrey, No. 12-5314 (6th Cir. Apr. 5, 2013), is misplaced. In Hedgepath, the Sixth Circuit analyzed Kentucky Administrative Regulations and the Three Forks Regional Jail Policy, concluding that these sources combined to create a situation where the act of observing the inmate was ministerial in nature. Id. at *6. The Court then went on to hold that the deputy jailers were not entitled to the protection of qualified immunity. Id. Here, the application of qualified immunity is not currently at issue. It was already decided in the Court's previous Memorandum, Opinion, and Order. (See Mem. Op. & Order [DN 133] 40–48.)

## 2. Partial Summary Judgment that Warren County Failed to Train its Officers

Plaintiffs' partial summary judgment motion next asks the Court to find that Warren County failed to train its officers on the EMS Policy. In support, the Plaintiffs cite Jailer Strode's deposition, noting that he admitted that his deputy jailers were not trained on how to recognize the symptoms of any of the problems identified in the Jail's EMS Policy on emergencies. According to Plaintiffs, the "only defense" offered by the County was that its deputy jailers received the training mandated by Kentucky's regulations, but the Court "found that defense inadequate to meet Plaintiffs' failure-to-train claims." (Pls.' Mot. for Partial Summ. J. [DN 185] 3.)

The Defendants counter that there are genuine issues of material fact which exist with regard to the training received by the jailers. In support, Defendants also cite Jailer Strode's deposition,

noting that he testified that in addition to state-mandated training, each newly-hired deputy jailer at the Warren County Regional Jail was guided through a four-week orientation and training program, which included training on what to do when an inmate does not appear to be okay. According to the Defendants, this evidence shows that summary judgment is improper. The Court agrees.

While Plaintiffs argue that Defendants' evidence "is simply not enough to overcome Jailer Strode's frank admission that its deputy jailers were not given any training on how to recognize the symptoms of any of the problems identified in the Jail's EMS policy as emergencies," (Pls.' Reply [DN 201] 3), the Court finds that this is for the jury to decide. Summary judgment on the Plaintiffs' failure-to-train claim against Warren County is inappropriate. The motion is **DENIED** on this issue.

The Court's conclusion is strengthened by the fact that a failure-to-train claim is derivative by nature. As Defendants note, "[i]f no constitutional violation by the individual defendants is established, the [governmental] defendants cannot be held liable under § 1983." Watkins v. City of Battle Creek, 273 F.3d 682, 687 (6th Cir. 2001). In other words, for Warren County to be liable under a failure-to-train theory, a determination must first be made that the deputy jailers deprived Mr. Finn of his constitutional rights. Because the Court has made no such determination, summary judgment on this issue is inappropriate. The Plaintiffs' motion fails as a matter of law.

## IV. DISCUSSION ON PLAINTIFFS' OBJECTIONS

### A. Plaintiffs' Objection to Defendants' Exhibits [DN 179]

The Plaintiffs object to, and move the Court to exclude from trial, four exhibits that have been identified by the Defendants. The Court considers these exhibits below.

### 1. Written Reports and Curriculum Vitae of Defendants' Experts

The Plaintiffs object to the Defendants' introduction of any written reports and curriculum

vitae of the Defendants' experts. For the reasons set forth elsewhere in this opinion, the Plaintiffs' objection is **SUSTAINED** as to the written reports and **OVERRULED** as to the curriculum vitae.

### 2. Any Treatises, Journals, Books, or Other Articles Not Referenced or Relied Upon by an Expert, or Disclosed in Discovery

The Plaintiffs object to the Defendants' introduction of any treatises, journals, books, or other articles that are not referenced or relied upon by an expert, or disclosed in discovery. The Defendants have not opposed this objection. As such, it is **SUSTAINED**.

### 3. Documents Evidencing Training Received by William Baker, Chad Whitaker, Tom Maxwell, Allen White, and Greg Martin

The Plaintiffs object to the Defendants' introduction of any documents evidencing training received by William Baker, Chad Whitaker, Tom Maxwell, Allen White, and Greg Martin. According to the Plaintiffs, such documents: (1) are irrelevant because the Plaintiffs do not dispute the training reflected therein; and (2) are intended solely to confuse the jury, as none reflect that the Defendants were trained in anything other than CPR or basic first aid—and none reflect that the Defendants received training as to what steps should be taken in response to alcohol withdrawal.

Defendants counter that the documents evidencing the training received by them are relevant, as they will assist the jury in determining whether there was inadequate training and supervision, as well as whether the training and supervision were substantial factors which caused injury to Mr. Finn.

The Court agrees with the Defendants. In this case, the Plaintiffs allege that the Defendants provided inadequate training and supervision to the deputy jailers. It would be highly prejudicial for the Court to allow the Plaintiffs to criticize the training received by the Warren County Regional Jail staff, but not allow the Defendants to present evidence of their training program in their defense. Further, it seems clear to the Court that admitting evidence of the training received by the

Defendants would not confuse the jury. While the Plaintiffs are certainly free to argue that the documents do not reflect that the Defendants were trained in anything other than CPR or basic first aid—and do not reflect that the Defendants received training as to what steps should be taken in response to alcohol withdrawal—such criticisms go to the weight, as opposed to the admissibility, of the evidence. The Plaintiffs' objection is **OVERRULED.**

### 4. Southern Health Partners, Inc.'s Quarterly Reports dated January 1, 2009 and April 10, 2009

Plaintiffs object to the Defendants' introduction of SHP's quarterly reports, noting that these documents are irrelevant because SHP would only bear vicarious liability for the acts and omissions of Defendant Leah Price, who has settled her claims in this case. The Court agrees with Plaintiffs' objection. It is **SUSTAINED**.

### B. Plaintiffs' Objection to Defendant Adams' Witness [DN 180]

The Plaintiffs object to, and move the Court to exclude from trial, William B. Zuckerman, who was listed as a witness by Defendant Adams. This objection is based on the fact that the Court has previously granted the Plaintiff's <u>Daubert</u> motion with respect to Mr. Zuckerman, barring him from testifying at trial. (<u>See</u> Mem. Op. & Order [DN 132] 4–6, 8.) For the reasons outlined in the Court's previous opinion, Plaintiffs' objection is **SUSTAINED**.

### V. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Leah Price's Motion in Limine to Exclude Evidence regarding Certain Damages [DN 168] is **DENIED** and that her Motion in Limine to Exclude Testimony of Richard Blondell [DN 169] is **DENIED**.

**IT IS FURTHER ORDERED** that the County Defendants' Motion in Limine to Exclude Punitive Damages [DN 170] is **GRANTED** in part and **DENIED** in part. It is **GRANTED** as to the

punitive damages claims against Warren County and the individual Defendants in their official capacities. It is **DENIED** as to the punitive damages claims against the individual Defendants in their individual capacities.

**FURTHER** that the County Defendants' Motion in Limine to Exclude Liability Insurance [DN 171] is **GRANTED** and that their Motion in Limine to Exclude Expert Report of E. Eugene Miller [DN 172] is **GRANTED**.

**FURTHER** that the County Defendants' Motion in Limine to Exclude Medical Opinion Testimony [DN 173] is **DENIED**, that their Motion in Limine to Exclude Hearsay Evidence [DN 174] is **DENIED**, and that their Motion in Limine to Exclude Evidence Regarding Certain Damages [DN 175] is **DENIED**.

**FURTHER** that Defendant John Adams' Motions in Limine [DN 176] are **GRANTED** in part and **DENIED** in part. They are **GRANTED** as to the motions to exclude: (1) standard of care testimony from witnesses not disclosed as experts; (2) testimony that Dr. Adams is insured against liability; (3) testimony from Plaintiffs' and/or their family members regarding the parties' financial condition; (4) the introduction of expert reports; and (5) evidence of other lawsuits. They are **DENIED** in all other respects.

**FURTHER** that Defendant John Adams' Motion in Limine to Exclude Evidence Regarding Certain Damages or, in the Alternative, Objection to Plaintiffs' Supplemental Response to Defendants' Interrogatories Regarding Loss of Earning Capacity [DN 181] is **DENIED**.

**FURTHER** that the Plaintiffs' Motions in Limine [DN 178] are **GRANTED** in part and **DENIED** in part. They are **GRANTED** as to the motions to exclude: (1) the written reports of the Defendants' experts; and (2) testimony or argument that the Warren County Regional Jail's policies

were superceded or rendered a nullity by those of SHP. They are **DENIED** in all other respects.

 **FURTHER** that the Plaintiffs' Motion for Partial Summary Judgment [DN 185] is **DENIED**.

 **FURTHER** that Plaintiffs' Objections to Defendants' Exhibits [DN 179] are **SUSTAINED** in part and **OVERRULED** in part. They are sustained as to: (1) the introduction of the written reports of the Defendants' experts; (2) the introduction of any treatises, journals, books, or other articles that are not referenced or relied upon by an expert, or disclosed in discovery; and (3) the introduction of SHP's quarterly reports. They are **OVERRULED** in all other respects.

 **FURTHER** that Plaintiffs' Objections to Defendants' Witness [DN 180] are **SUSTAINED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 17, 2013

cc: counsel of record

35